**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

PHILIP BROOKS,                          1:18-cv-1428-NLH-KMW

             Plaintiff,           **OPINION**

     v.

WAL-MART STORES, INC.; JOHN
DOES; MARY DOE; ABC BUSINESS
ENTITIES and XYZ
CORPORATIONS,

             Defendants.

_____

**APPEARANCES:**

MICHAEL A. GIBSON
D'ARCY JOHNSON DAY
3120 FIRE ROAD
SUITE 100
EGG HARBOR TOWNSHIP, NEW JERSEY 08234

    _Counsel for Plaintiff._

PATRICK J. MCDONNELL
MCDONNELL & ASSOCIATES, P.C.
860 FIRST AVENUE
SUITE 5B
KING OF PRUSSIA, PENNSYLVANIA 19406

SHARLEEN E. PRATT
MCDONNELL & ASSOCIATES, P.C.
860 FIRST AVENUE
SUITE 5B
KING OF PRUSSIA, PENNSYLVANIA 19406

    _Counsel for Defendant Wal-Mart Stores, Inc._

**HILLMAN**, District Judge

This matter comes before the Court on motion of Wal-Mart Stores, Inc. ("Defendant") for entry of summary judgment in its favor. (ECF No. 19). Philip Brooks ("Plaintiff") opposes Defendant's motion. (ECF No. 21). Also before the Court is Plaintiff's motion to seal certain documents, which Defendant does not oppose. (ECF No. 25). For the reasons that follow, Defendant's motion for summary judgment will be granted and Plaintiff's motion to seal will be denied, without prejudice.

**BACKGROUND**

The Court takes its facts from the parties' statements submitted pursuant to Local Civil Rule 56.1(a). The Court notes relevant disputes where necessary.

On the morning of July 11, 2016, Plaintiff visited a Walmart store in Mays Landing, New Jersey. (ECF No. 19-2 ("Def. SOMF") at ¶¶2, 7). Plaintiff knew the store well as he had visited it many times before. (Def. SOMF at ¶8). After acquiring a shopping cart, Plaintiff entered the store, located the items he wished to purchase, and began traveling towards the front of the store to check out. (Def. SOMF at ¶¶10-16). While in route to the checkout area, Plaintiff walked through the men's clothing department. (Def. SOMF at ¶17). Plaintiff turned his shopping cart down an aisle he describes as "tight"

2

due to the arrangement of various clothing displays.  (Def. SOMF
at ¶¶19-20).

Undeterred by the lack of space, Plaintiff continued down
the aisle until encountering two unaccompanied shopping carts
partially blocking his path.  (Def. SOMF at ¶¶22-24, 29-30).
Instead of choosing a different route or attempting to move the
impeding carts, Plaintiff attempted to maneuver around them.
(Def. SOMF at ¶¶31-32).  While Plaintiff successfully negotiated
his way around the first cart, his journey around the second
cart was less successful.  (Def. SOMF at ¶33).  While attempting
to maneuver around the second cart, Plaintiff struck his left
foot on a bench used for trying on footwear (a "shoe bench"),[1]
injuring his toes and foot.[2]  (Def. SOMF at ¶¶34-35, 42).

---

[1] The parties agree the shoe bench was located directly adjacent
to the endcap of a display unit.  Whether it was attached to the
display unit or not remains unclear.

[2] Defendant argues that Plaintiff has not testified consistently
regarding the object he struck.  Plaintiff rejects Defendant's
assertion.  (ECF No. 21 at ¶18) ("Plaintiff consistently
testified that he struck his foot on a self-service shoe
bench.").  While Defendant would disagree, Plaintiff
consistently explained that he struck his foot on a shoe bench;
he could not, however, ascertain the way his foot struck the
bench.  See (ECF No. 19-5 ("Pl. Dep.") at T64:11-19) ("Q: And
you hit a portion of the base of the bench?  A: Yes.  More than
likely, I couldn't see what I hit"); (T84:10-18) (responding to
questions regarding what part of the bench he struck, Plaintiff
testified "I couldn't see. . . . I couldn't see, I didn't see it
when I hit.  I would imagine I hit it on the bottom part");
(T91:13-14) ("I hit it on the bench, but where, I don't know.
Not sure.").  As the non-moving party, the Court will credit

3

Plaintiff describes the shoe bench as being approximately three-and-one-half feet wide and approximately one-and-a-half feet tall. (Def. SOMF at ¶41). Plaintiff does not contend the bench was blocking the aisle he was walking in.[3] (Def. SOMF at ¶36).

After striking his foot, Plaintiff continued to the front of the store to report the incident. An incident report was completed, and Plaintiff left the store without requiring medical attention.

On February 1, 2018, Defendant removed this action from the

_____

Plaintiff's proffered version of the incident for purposes of resolving Defendant's motion. In the end, the dispute is not a material one.

[3] Plaintiff denies this factual contention and directs the Court to his counterstatement of material facts at paragraphs two, eighteen, and twenty-two. Paragraph two states that the bench was "sticking out into the aisle." (ECF No. 21 at ¶2). That paragraph cites to Plaintiff's complaint in support of that assertion. An unverified complaint, however, is not sufficient supporting evidence under Local Civil Rule 56.1. As such, paragraph two will be ignored. Paragraph eighteen states that "Plaintiff consistently testified he struck his foot on a self-service shoe bench." (ECF No. 21 at ¶18). Paragraph eighteen does not support a finding that the bench was sticking out into the aisle; certainly, Plaintiff could have struck an object without that object being in the aisle. As such, paragraph eighteen must also be ignored. Paragraph twenty-two refers to shopping carts and no bench at all. As such, it too must be ignored. Indeed, the record directly contradicts Plaintiff's denial of this fact. When Plaintiff was asked at his deposition whether he contended that "the bench itself was . . . blocking the aisle somewhat" he responded "No." (T92:23-25). Plaintiff has not adequately supported his denial of this fact through record evidence and it will be accepted as true over his objection.

Superior Court of New Jersey to this Court. (ECF No. 1).
Plaintiff's complaint, although purporting to assert two
separate claims, alleges only that Defendant was negligent in
permitting "hazards . . . to exist in the aisle while patrons
such as the Plaintiff were utilizing same, causing Plaintiff to
bump his foot and become injured." See (ECF No. 1-2 at ¶5).
The parties have fully briefed Defendant's motion for summary
judgment and Plaintiff's motion to seal, and they are,
therefore, ripe for adjudication.

## DISCUSSION

### I.  Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction pursuant
to 28 U.S.C. § 1332.

### II.  Legal Standard – Summary Judgment

Summary judgment is appropriate where the Court is
satisfied that "'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits if any,' . . . demonstrate the absence of a genuine
issue of material fact" and that the moving party is entitled to
a judgment as a matter of law." Celotex Corp. v. Catrett, 477
U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such
that a reasonable jury could return a verdict in the nonmoving

party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248 (1986).  A fact is "material" if, under the governing

substantive law, a dispute about the fact might affect the

outcome of the suit.  Id.  "In considering a motion for summary

judgment, a district court may not make credibility

determinations or engage in any weighing of the evidence;

instead, the non-moving party's evidence 'is to be believed and

all justifiable inferences are to be drawn in his favor.'"

Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)

(citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment

always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."); see Singletary v. Pa.

Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although

the initial burden is on the summary judgment movant to show the

absence of a genuine issue of material fact, 'the burden on the

moving party may be discharged by "showing"--that is, pointing

6

out to the district court—-that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

III.  **Analysis**

Defendant argues summary judgment is appropriate because (1) Plaintiff can only speculate as to the cause of his injuries;[4] (2) the conditions identified by Plaintiff are not dangerous conditions because (a) the aisle was not in unreasonably dangerous condition, (b) shopping carts are not inherently dangerous instrumentalities, and (c) a bench of the type Plaintiff identifies is not an unreasonably dangerous condition; and (3) Defendant did not have actual or constructive notice of any purportedly dangerous condition.

Plaintiff argues that (1) issues of fact remain, requiring denial of Defendant's motion, and (2) the mode-of-operation doctrine applies, negating any need for Plaintiff to prove Defendant had constructive notice of the dangerous condition.

"In New Jersey, . . . it is widely accepted that a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3)

---

[4] Defendant argues that Plaintiff's claim must fail because he is unsure "what he struck" and cannot "establish whatever it was constituted a breach of duty or hazardous condition from which Walmart should have protected him."  (ECF No. 19-1 ("Def. Br.") at 11).  Plaintiff's deposition testimony sufficiently explains that he struck his foot on a shoe bench; while Plaintiff may not be able to identify what portion of the bench he struck, the Court is satisfied that sufficient facts exist to reject Defendant's motion for summary judgment to the extent it relies on this argument.  See footnote two, supra.

actual and proximate causation, and (4) damages." Senisch v.
Tractor Supply Co., No. 16-cv-47, 2018 WL 324717, at *4 (D.N.J.
Jan. 8, 2018), appeal dismissed, No. 18-1265, 2018 WL 3933746
(3d Cir. Apr. 23, 2018) (quoting Jersey Cent. Power & Light Co.
v. Melcar Util. Co., 59 A.3d 561, 571 (N.J. 2013)).

"Business owners owe to invitees a duty of reasonable or
due care to provide a safe environment for doing that which is
within the scope of the invitation." Senisch, 2018 WL 324717,
at *5 (quoting Nisivoccia v. Glass Gardens, Inc., 818 A.2d 314,
316 (N.J. 2003)). "The duty of due care requires a business
owner to discover and eliminate dangerous conditions, to
maintain the premises in safe condition, and to avoid creating
conditions that would render the premises unsafe." Id. (quoting
Nisivoccia, 818 A.2d at 316).

"Ordinarily, an injured plaintiff asserting a breach of
that duty must prove, as an element of the cause of action, that
the defendant had actual or constructive knowledge of the
dangerous condition that caused the accident." Id. (quoting
Nisivoccia, 818 A.2d at 316). If the mode-of-operation doctrine
applies, however, Plaintiff is relieved of making such a
showing.

Plaintiff claims this is a mode-of-operation case in which
he need not prove actual or constructive notice. Accordingly,

this Court must first determine whether this is an appropriate case in which to apply the mode-of-operation doctrine.

A. The Mode-of-Operation Doctrine Does Not Apply

Under the mode-of-operation doctrine, New Jersey relieves a plaintiff from the burden of proving constructive notice "in circumstances in which, as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Senisch, 2018 WL 324717, at *5 (citing Brown v. Racquet Club of Bricktown, 471 A.2d 25, 29 (N.J. 1984)). "In those circumstances, [the New Jersey Supreme Court] ha[s] accorded the plaintiff an inference of negligence, imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." Id. (quoting Brown, 471 A.2d at 29).

However, the mode-of-operation doctrine does not apply in every circumstance, and as this Court has recognized, New Jersey declines to apply the mode-of-operation doctrine in situations, like the one before this Court, in which a plaintiff is injured by a shopping cart or a shoe bench. As for shopping carts:

> We are unable to say that a substantial risk of injury is implicit, or inherent, in the furnishing of shopping carts to patrons by a store proprietor. Shopping carts are not dangerous instrumentalities,

10

and they are uniquely suitable for the purpose for
which furnished.  Shop-Rite was under a legal duty of
exercising ordinary care to furnish a reasonably safe
place and safe equipment for its patrons consistent
with its operation and the scope of its invitation.
It is not an insurer of the safety of its patrons. The
issue is not merely whether it was foreseeable that
patrons, or other third parties, would negligently or
intentionally misuse shopping carts, but whether a
duty exists to take measures to guard against such
happenings. . . .

Every human activity involves some risk of harm,
but the reasonable probability of having other than a
minor accident from the use of carts in Shop-Rite's
operation does not give rise to a duty to take
measures against it.  So viewed, we find that
plaintiff has failed to carry the burden of showing a
breach of duty on Shop-Rite's part in furnishing its
patrons with carts under the circumstances here
existing.

Senisch, 2018 WL 324717, at *7 (quoting Znoski v. Shop-Rite

Supermarkets, Inc., 300 A.2d 164, 165-66 (N.J. Super. Ct. App.

Div. 1973)).

As for injuries caused by a shoe bench, the Superior Court

of New Jersey, Appellate Division, has explicitly held that such

"is not a situation . . . in which the mode-of-operation rule

applies."  Carney v. Payless Shoesource, Inc., No. A-2680-07T2,

2009 WL 425822, at *1-2 (N.J. Super. Ct. App. Div. Feb. 24,

2009).  As the Appellate Division explained,

[i]n spillage cases, for example, involving substances
on the floor of the produce aisle of a supermarket,
the potential hazard is not readily noticeable to a
patron whose attention is naturally focused elsewhere.
It is probable that produce will fall on the floor in
that business.  That patrons may step on slippery

11

substances because they are looking at shelves or in bins is a known hazard.

Id.  Therefore, in spillage cases, the mode-of-operation doctrine may apply.  See Id.

Shoe benches, however, are quite large and readily noticeable, negating the need to apply the mode-of-operation doctrine.  As the Appellate Division recognized, "two-foot by two-foot portable shoe benches for use by customers who try on merchandise do not raise a substantial risk inherent in defendant's mode of doing business.  Any reasonably prudent person would observe, in light of the dimensions of the benches, their presence in his or her lane of travel."  Id.

In this case, while the shoe bench at issue may or may not have been of the portable kind at issue in Carney, the dimensions of the two are strikingly similar.  Like the court in Carney, this Court finds that a reasonably prudent person would have seen the shoe bench, and therefore, there is no inherent, latent harm requiring application of the mode-of-operation doctrine.  As such, this Court concludes the mode-of-operation doctrine does not apply in this case; to prevail, Plaintiff must establish the traditional elements of negligence, including that Defendant had actual or constructive notice of a dangerous condition.

B. <u>Plaintiff Has Not Established Defendant Had Actual or Constructive Notice of A Dangerous Condition</u>

Defendant argues Plaintiff presents no evidence supporting a finding that Defendant had actual or constructive notice of a dangerous condition.  Plaintiff does not argue Defendant had actual notice of any dangerous condition,[5] but argues Defendant had constructive notice because (1) Plaintiff identified the object he injured his foot on, (2) Plaintiff produced evidence of what caused the injury, (3) the injury occurred in a busy section of the store, (4) Defendant has a duty to identify safety concerns, (5) the objects causing Plaintiff's injuries are self-service in nature, and (6) an employee of Defendant was "in the area of [the] bench just preceding [Plaintiff's] injury." (ECF No. 21 at 7-10).  None of these assertions, even if true, satisfy the elements Plaintiff must establish.

1. <u>Plaintiff Has Not Established A Dangerous Condition Existed</u>

Plaintiff argues that the issue of whether a dangerous condition existed is a question of fact left to a jury. Defendant argues that no reasonable jury could find the

---

[5] Setting aside Plaintiff's waiver of this issue, there is no evidence in the record indicating prior incidents of this type, and Defendant's corporate representative testified that he never witnessed a bench being out of place in the store. (ECF No. 21-4 ("Trotta Dep.") at T38:7-9).

conditions presented were dangerous.  The Court agrees with
Defendant.

"The dangerous condition question is generally one of fact
to be decided by a jury." Charney v. City of Wildwood, 732 F.
Supp. 2d 448, 454 (D.N.J. 2010) (citing Vincitore v. N.J. Sports
& Exposition Auth., 777 A.2d 9, 11-12 (N.J. 2001)).  "However,
like any question of fact, this determination is subject to a
preliminary assessment by the court as to whether it can
reasonably be made by a jury considering the evidence." Id.
(citing Vincitore, 777 A.2d at 11-12).  Therefore, the Court
must determine whether the evidence is such that a reasonable
jury could determine that any defect amounted to a dangerous
condition.

A "dangerous condition" is a "condition of property that
creates a substantial risk of injury when such property is used
with due care in a manner in which it is reasonably foreseeable
that it will be used." Morales by & through Fernandez v. Sussex
Cty. Cmty. Coll., No. A-0305-15T4, 2017 WL 3722530, at *5 (N.J.
Super. Ct. App. Div. Aug. 30, 2017) (citation omitted).  The
dangerous condition "must be inherent in the property[,]" Weiser
v. County of Ocean, 740 A.2d 1117, 1120 (N.J. Super. Ct. App.
Div. 1999), which will not be considered dangerous if the
condition only exists when the property is used without due

14

care.  Garrison v. Twp. of Middletown, 712 A.2d 1101, 1103-04 (N.J. 1998).  Whether a dangerous condition exists "depends on whether the property creates a substantial risk of injury to persons generally who would use the property with due care in a foreseeable manner."  Id. at 1106 (citation omitted).

New Jersey courts have held that shoe benches are not inherently dangerous instrumentalities, and when used with due care, the Court cannot conceive how they may be inherently dangerous.  See Carney, 2009 WL 425822, at *1-2 ("two-foot by two-foot portable shoe benches for use by customers who try on merchandise do not raise a substantial risk inherent in defendant's mode of doing business.  Any reasonably prudent person would observe, in light of the dimensions of the benches, their presence in his or her lane of travel.").

The same is true for shopping carts.  See Senisch, 2018 WL 324717, at *7 (quoting Znoski, 300 A.2d at 165-66) ("We are unable to say that a substantial risk of injury is implicit, or inherent, in the furnishing of shopping carts to patrons by a store proprietor.  Shopping carts are not dangerous instrumentalities, and they are uniquely suitable for the purpose for which furnished.").  As such, Plaintiff must prove some other circumstance rendered these objects dangerous.

15

Plaintiff appears to argue that the bench being out of place or the carts being in his way may be facts, which when taken together, render these objects dangerous.  That argument is unpersuasive.  As for the shopping carts, Plaintiff could easily have moved the carts from his path or selected another route of travel.  His election not to do so does not render shopping carts dangerous.

As for the shoe bench, Plaintiff recognizes that, at most, the shoe bench he struck was "maybe an inch or two" beyond the endcap at the time he struck it.  (Def. SOMF at ¶43) (citing T90:22 – T91:1) (Q: "[H]ow far out was that bench sticking out at the time of your incident?  A: I would say maybe an inch or two.").  New Jersey courts hold that "minor imperfections" or minor defects will not give rise to an actionable claim.  <u>See</u> <u>Chamberlain v. City of Wildwood</u>, No. A-3424-12T1, 2013 WL 5777832, at *4 (N.J. Super. Ct. App. Div. Oct. 28, 2013); <u>see</u> <u>also</u> <u>Charney</u>, 732 F. Supp. 2d at 456 (finding that "not every defect" is actionable and citing cases for same).  In this case, no reasonable jury could find that Defendant was negligent in failing to search out and cure a minor defect – a bench that may have been an inch or two out of place.  On that basis alone, summary judgment would be appropriate.

2. <u>Plaintiff's Action Also Fails Because He Has Not
Established Defendant Had Constructive Notice Of Any
Allegedly Dangerous Condition</u>

A defendant has constructive notice of a dangerous
condition when it exists "for such a length of time as
reasonably to have resulted in knowledge and correction had the
defendant been reasonably diligent." <u>Troupe v. Burlington Coat
Factory Warehouse Corp.</u>, 129 A.3d 1111, 1114 (N.J. Super. Ct.
App. Div. 2016) (quoting <u>Parmenter v. Jarvis Drug Stores, Inc.</u>,
138 A.2d 548, 550 (N.J. Super. Ct. App. Div. 1957)).
Constructive notice can be inferred in various ways, including
the characteristics of the dangerous condition giving rise to
the incident. <u>Id.</u> (citing <u>Tua v. Modern Homes, Inc.</u>, 165 A.2d
790, 795 (N.J. Super. Ct. App. Div. 1960)) (finding constructive
notice where substance causing a patron to fall appeared dried
onto the floor). Additionally, a plaintiff may present
eyewitness testimony regarding the dangerous condition to
establish the length of time it was present. <u>Id.</u> (citing
<u>Grzanka v. Pfeifer</u>, 694 A.2d 295, 300-01 (N.J. Super. Ct. App.
Div. 1997), <u>certif. denied</u>, 713 A.2d 498 (N.J. 1998)) (finding
constructive notice where eyewitness noted the dangerous
condition was present for an extended period).

Plaintiff does not present any evidence regarding how long
the bench had allegedly been out of place. Instead, Plaintiff

17

argues that an employee of Defendant was "in the area of [the] bench" (ECF No. 21 at 8), and, so the argument would go, should have (1) noticed the bench was out of place and (2) moved it back to its proper location.  However, simply explaining that an employee was in the area where an incident occurred, without more, is not enough to establish constructive notice; indeed, such facts do not explain how long the dangerous condition may have existed or that Defendant had an opportunity to correct it.  See Troupe, 129 A.3d at 1114.  Because there is no proof in the record suggesting (1) the bench was out of place for an extended period of time and (2) Defendant had a reasonable opportunity to correct its placement, constructive notice has not been established and Plaintiff's claim must fail.

**IV.   Plaintiff's Motion To Seal**

Plaintiff moves to seal three exhibits to its opposition to Defendant's motion for summary judgment. (ECF No. 25). Specifically, Plaintiff seeks to seal Exhibits F, G, and I to its opposition papers.  These documents contain what appear to be Defendant's janitorial guidelines.  Defendant do not oppose Plaintiff's motion.  For the reasons that follow, Plaintiff's motion must be denied, without prejudice.

Local Civil Rule 5.3 governs requests to seal documents filed with the Court.  To succeed on a motion to seal, the

18

moving party must describe: (1) the nature of the materials at issue; (2) the legitimate private or public interests that warrant the relief sought; (3) the clearly defined and serious injury that would result if the relief sought is not granted; and (4) why a less restrictive alternative to the relief sought is not available.  L. Civ. R. 5.3(c)(3).  While it is within the Court's authority to restrict public access to information, it is well-settled that there is a "common law public right of access to judicial proceedings and records."  In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001).  The moving party bears the burden to overcome this presumption of public access and must demonstrate that "good cause" exists for the protection of the material at issue.  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994).  Good cause exists only when the moving party makes a particularized showing that disclosure will cause a "clearly defined and serious injury."  Id.  Good cause is not established where a party merely provides "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning."  Id. (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)).

Plaintiff's motion states that the materials to be sealed "contain confidential information regarding Wal-Mart's business practices and are subject to a Discovery Confidentiality Order

between the Parties[.]"  (ECF No. 25 at 1; ECF No. 25-1 at ¶1).

However, "just because a document is marked confidential and

subject to a protective order, does not automatically mean a

document can be sealed.  The document must still satisfy the

standard set forth in Rule 5.3."  Vista India, Inc. v. Raaga,

LLC, No. 07-1262, 2008 U.S. Dist. LEXIS 24454, *9, n.2 (D.N.J.

Mar. 27, 2008).  Indeed, in this case, the relevant

confidentiality order provides that "Confidential Material may

be filed with the Court.  Should any party have good cause to

seal from public view any Confidential Material that is filed

with the Court, that party must file a separate and specific

motion for such protection."  (ECF No. 13 at ¶12).  Therefore,

to the extent Plaintiff's motion suggests the existence of a

confidentiality order mandates sealing, that motion fails.

The Court has reviewed the material Plaintiff wishes to

seal.  This material relates to Defendant's strategies for

cleaning and monitoring the cleanliness of its stores.  In the

first instance, the Court ponders why Plaintiff has any interest

at all in sealing discovery produced by Defendant that is not

personal to Plaintiff.  To seal material filed with the Court,

the moving party must show that disclosure will cause a clearly

defined and serious injury; in this case, Plaintiff would have

inherent difficulty in establishing it would suffer any injury

if Defendant's janitorial manuals are disclosed.  See gen. Pansy, 23 F.3d at 786 (discussing the need to establish a clearly defined injury would ensure if material was publicly disclosed).  Nor has Plaintiff alleged Defendant would suffer the requisite injury.

In addition, and perhaps tellingly, Defendant itself has not moved to seal its own materials.  This could be because they are not of the kind likely to be sealed.  Another court within this District has held that similar types of documents should not be sealed as they are not proprietary.  Zavala v. Wal-Mart Corp., No. 03-5309, 2007 U.S. Dist. LEXIS 67282, *21, 2007 WL 2688934 (D.N.J. Sept. 12, 2007) (finding that a document entitled "'Wal-Mart Restroom Care Toilets and Urinals First,' which describe[s] techniques and instructions for cleaning and disinfecting toilet bowls, urinals and 'trash' receptacles" is not confidential and need not be sealed).  Even a cursory review of those types of materials, the Zavala court concluded, "demonstrates the absence of any confidential or otherwise commercially sensitive nature of the excerpts from Wal-Mart's Maintenance Manual."  Id.  This Court finds the materials Plaintiff seeks to seal in this matter akin to those at issue in Zavala, and on the stated basis provided by Plaintiff, the Court finds that sealing such material on the present record is not

appropriate.  Nonetheless, the Court will permit either party to explain, if they can and in appropriate detail, why such documents must be sealed before ordering that they be unsealed.

As such, Plaintiff's motion to seal will be denied, without prejudice.  Either party may file a renewed motion, within 14 days hereof, addressing the requirements set forth in Local Civil Rule 5.3 and explaining why <u>Zavala</u> should not guide this Court in deciding any renewed motion.  If neither party elects to file a renewed motion to seal, the Clerk will unseal those documents currently filed under temporary seal pursuant to Local Civil Rule 5.3(i)(8).

<u>CONCLUSION</u>

For the reasons expressed above, Defendant's motion for summary judgment (ECF No. 19) will be granted.  Plaintiff's motion to seal (ECF No. 25) will be denied, without prejudice, and the parties shall have 14 days to file a renewed motion to seal.  An appropriate Order will be entered.


Date: April 24, 2020                 s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.